UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MONICA RAFEEDIE, et al,<br><br>            Plaintiffs,<br>vs.<br><br>L.L.C., Inc., and W.F.K.R., Inc.,<br><br>            Defendants. | Civil Action No: A-10CA 743LY<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE OR DISMISS DEFENDANTS' AFFIRMATIVE DEFENSES** |

**DEFENDANTS' RESPONSE TO MOTION TO STRIKE OR DISMISS DEFENDANTS' AFFIRMATIVE DEFENSES**

BRIAN W. BISHOP
LAW OFFICE OF BRIAN W. BISHOP
Counsel for Defendants
115 Wild Basin Road, Suite 106
Austin, Texas 78746
(512) 327-5121
(512) 327-5122
brian@bbishoplaw.com

ROBERT B. DEBES, JR.
DEBES LAW FIRM
Counsel for Plaintiff(s)
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
(713) 623-0900
bdebes@debeslaw.com

BRADLEY J. SHAFER (MI Bar No. P36604)
MATTHEW J. HOFFER (MI Bar No. P64147)
SHAFER & ASSOCIATES, P.C.
Co-Counsel for Defendants
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
(517) 886-6560
brad@bradshaferlaw.com

## INTRODUCTION

Motions to strike affirmative defenses pursuant to Fed. R. Civ. P. 12(f) are generally disfavored, and Plaintiffs' Motion to Strike or Dismiss Defendants' Affirmative Defenses (the "Motion;" Doc. 14) aptly demonstrates why. Rather than reviewing the factual allegations supporting Defendants' Counterclaims (the general allegations of which, incidentally, exceed the entire length of Plaintiff's Amended Complaint (Doc.9)) for notice of the facts supporting Defendants' affirmative defenses, Plaintiffs filed the Motion with the Court claiming Defendants have not alleged supporting facts "*at all*." Defendants' allegations adequately provide Plaintiffs notice of the defenses asserted, and Plaintiffs only claim that two affirmative defenses are inadequate as a matter of law. The Motion is without merit and should be denied.

**I.   STANDARDS FOR ADJUDICATING A RULE 12(f) MOTION TO STRIKE AFFIRMATIVE DEFENSES.**

> Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, *motions under Rule 12(f) are viewed with disfavor and are infrequently granted*. In order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party. *The court must deny a motion to strike if there is any question of law or fact*.

**F.D.I.C. v. Niblo**, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (emphasis added) (citing **Augustus v. Board of Pub. Instruction of Escambia County**, 306 F.2d 862, 868 (5th Cir. 1962)).

> "An affirmative defense is subject to the same pleading requirements as is the complaint." **Woodfield v. Bowman**, 193 F.3d 354, 362 (5th Cir. 1999). In other words, the liberal pleading standards applicable to claims for relief apply with equal force to defenses to liability. A claimant is thus entitled to "fair notice" of the defenses which he will encounter, and a defendant must plead his defenses with specificity sufficient to supply such. **Id**.

**Raytheon Co. v. Indigo Sys. Corp.**, 2008 WL 5422874, *1 (E.D. Tex. Dec. 29, 2008).

1

The pleading standard is so lenient that the "Fifth Circuit has explicitly acknowledged that merely pleading the name of the affirmative defense . . . may be sufficient." **Teirstein v. AGA Med. Corp.**, 2009 WL 704138, *2 (E.D. Tex. March 16, 2009) (ellipsis in original) (citing **Woodfield v. Bowman**, 193 F.3d 354, 362 (5th Cir. 1999)). The courts have also not been so myopic as to ignore factual pleadings not contained in the defenses themselves. **Id**. ("taking into account the factual assertions in Defendant's Answers, Plaintiffs is put on fair notice not only of the defense being advanced, but also of the factual allegations at the basis for that defense"). Finally, "[c]ourts should be cautious in granting motions to strike affirmative defenses, particularly when a defendant may not have had ample opportunity to prove his allegations that a defense might succeed on the merits." **Owen v. UNUM Life Ins. Co.**, 285 F.Supp.2d 778, 780 (E.D. Tex. 2003) (further noting that striking a defense is only appropriate where the defense is doomed to fail *as a matter of law*).

## II. THE FACTS PLED IN SUPPORT OF DEFENDANTS' COUNTERCLAIMS PROVIDE FAIR NOTICE OF THE AFFIRMATIVE DEFENSES.

Plaintiffs sequentially list the affirmative defenses they wish to have stricken, but make no attempt to articulate why the factual allegations pled in support of Defendant's Counterclaims (Doc. 11, pp. 15-35) – which Plaintiffs have *not* moved to dismiss – fail to provide them with "fair notice." Just as the **Teirstein** court looked to the factual allegations contained in an answer to supply notice, Defendants request that the Court look to the detailed allegations supplied in support of the Counterclaims. In any event, should the Court determine that any particular affirmative defense is lacking, Defendants request to opportunity to amend and rectify. *See, e.g.*, **Mayeaux v. La. Health Serv. & Indem. Co.**, 376 F.3d 420, 425 (5th Cir. 2004) (a court should "grant leave to amend freely, and the language of [Rule 15(a)] evinces a bias in favor of granting leave to amend") (clarification added). The Motion is premised on the bare assertion that

2

Defendants have failed to allege facts in support of their affirmative defenses *"at all,"* that premise is demonstrably false, and the Motion should be denied accordingly.

Plaintiffs have moved to strike the affirmative defenses contained in paragraphs 7, 22, 26, 27, 30, 31, 32, 33, 35, and 36 (Doc. 11) for lack of "fair notice," and those in paragraphs 29 and 43 (addressed below) as unsupportable as a matter of law. These affirmative defenses are based on Plaintiffs' course of conduct over a number of years, whereby they agreed to perform as independent contractors and earned amounts exceeding the minimum wage by retaining the totality of mandatory fees for personal entertainment performances ("Entertainment Fees"), discretionary tips above the Entertainment Fees ("Dance Tips"), and discretionary tips received over the course of stage performances ("Stage Tips"). Counterclaims, Doc. 11, ¶'s 7-18.

Plaintiffs enjoyed all the attendant benefits of performing as independent contractors, especially retaining the Entertainment Fees which, under an employment relationship, would clearly be service fees for providing a service on behalf of the employer and thus the lawful property -- as mandated by the Internal Revenue Code ("IRC") -- of the Defendants. **Id**. at ¶'s 7-31. On the other hand, Plaintiffs have failed to abide by the legal obligations of employees by, for example, reporting, as required by the IRC, all of their tip income to their "employer." **Id**. at ¶ 15, 19-22. In addition, Defendants have and continue to fully perform their obligations under the agreements and Plaintiffs never indicated they would prefer to perform as an employee for minimum wage or returned the Entertainment Fees to Defendants. **Id**. at ¶'s 26-28. In addition, those collective members (who Plaintiff Rafeedie seeks to represent) who still perform at Defendants' establishments continue to do so as independent contractors rather than asking or demanding to perform as minimum wage employees instead (which is what they claim to want by way of this lawsuit). **Id**. at ¶ 26.

3

Thus, Plaintiffs have notice of the factual bases supporting Defendants' claims that Plaintiffs have failed to conform to the legal duties of employees (Doc. 11, ¶ 7); have accepted satisfaction of any debt claimed (¶ 22); have unclean hands, have acted inequitably, and have violated the implied covenants of good faith and fair dealing (¶26); are equally to blame for the non-employee classification (¶ 27); have failed to mitigate damages (¶ 30); have waived or released any right to recovery (¶'s 31-32); have minimal damages (¶ 33); have abandoned their claims (¶ 35); and have engaged in intentional misconduct (¶ 36).

### III. THE ANTECEDENT QUESTION OF EMPLOYMENT DEFENSE

Plaintiffs specifically challenge the affirmative defense (Doc. 11, ¶ 29) that Plaintiffs' claims are barred due to the antecedent question of employment (Plaintiffs correctly assuming that this refers to the lack of payment of wages). Motion ¶ 8. While Plaintiffs rely upon a single unpublished district court opinion in a case that has not yet been fully adjudicated (<u>id</u>. ¶ 9) – which is certainly not binding upon this Court -- the case law is not clear and settled.

The most succinct description of this doctrine is found in **O'Connor v. Davis**, 126 F.3d 112 (2nd Cir. 1997), where the court was asked to consider the common law factors of employment in a Title VII claim. The Second Circuit observed, however, that it need not engage in such an analysis because of "the *antecedent question* of whether O'Connor was *hired* by [the defendant] for any purpose," <u>id</u>. at 115 (emphasis and clarification added), stating that:

> . . . .courts turn to common-law principles to analyze the character of an economic relationship *'only in situations that plausibly approximate an employment relationship.'* **Graves v. Women's Prof'l Rodeo Assoc.**, 907 F.2d 71, 74 (8th Cir. 1990). *Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because although '<u>compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, … it is an essential condition to the existence of an employer-employee relationship.</u>*

**O'Connor**, 126 F.3d at 115-116 (emphasis added, citations omitted).

4

Pursuant to this line of authority, the Second Circuit held that the *"preliminary question of remuneration"* was dispositive, and that because the plaintiff *had never received any salary or other wages from the alleged employer*, she could not be held to be an employee of the defendant. **Id**. at 116. While **O'Connor** evaluated an employment relationship in the context of the "common law" factors as are generally found in the Restatement (Second) of Agency, § 220, this case will be decided under the FLSA "economic realty test." *But see* **Shah v. Deaconess Hospital**, 355 F.3d 496, 499 (6th Cir. 2004) ("[t]he substantive differences between the two are minimal."). Regardless, decisions under the economic realities test also establish that the lack of payment by the alleged employer may indeed preclude a finding of employee status.[1]

Cases specifically under the FLSA are no different. *See, e.g.*, **Patel v. Wargo**, 803 F.2d 632, 635 (11th Cir. 1986) (no employment relationship as there was no evidence that the plaintiff "contemplated compensation for his acts"); **Villarreal v. Woodham**, 113 F.3d 202, 205 (11th Cir. 1997) ("in general, work constitutes employment when there is an *expectation* of in-kind

---

[1] *See, e.g.,* **Neff v. Civil Air Patrol**, 916 F. Supp. 710, 711-715 (S.D. Ohio 1996) (in a Title VII case, court concluded that the plaintiff could ***not*** be found to be an employee as a matter of law and that she had not produced any evidence that could lead a "reasonable juror to conclude that she worked *in expectation of compensation*") (emphasis added); **Tadros v. Coleman**, 717 F.Supp. 996, 1002-1006 (S.D.N.Y. 1989) (a person who is not *paid for services* is not "economically dependent on the business to which [they] render [ ] service," and therefore is not within the definition of an employee under the economic realities test), *aff'd*, 898 F.2d 10 (2d Cir. 1990) (quoting **Doty v. Elias**, 733 F.2d 720, 722-723 (10th Cir. 1984)); **Graves v. Woman's Professional Rodeo Assoc., Inc.**, 907 F.2d 71, 72-74 (8th Cir. 1990) (court noting that compensation by the putative employer to the putative employee in exchange for his services "is an *essential condition* to the existence of an employer-employee relationship," and that the court will use the economic realities test "only in situations that plausibly approximate an employment relationship" – since there was no payment in the case at bar, the court did not utilize the economic realities test because the relationship *did not "make it past this first cut"*) (emphasis added); and **Smith v. Berks Community Television**, 657 F.Supp. 794,796 (E.D. Penn. 1987) ("control" in the relationship was not dispositive in evaluating economic dependence in Title VII claim as the worker must be *"paid by"* the alleged employer, which was not the case there, and therefore no employment relationship could be found) (emphasis in original).

5

benefits in exchange for services") (emphasis added).

This issue was clarified in **Tony and Susan Alamo Foundation v. Sec. of Labor**, 471 U.S. 290 (1985), where the Court noted:

> "An individual who, 'without promise or expectation of compensation, but solely for his *personal purpose* or pleasure, worked in activities carried on by other persons either for their pleasure *or profit*,' is *outside the sweep of the Act.*"

**Id**. at 295 (emphasis added) (citing **Walling v. Portland Terminal Co.**, 330 U.S. 148, 152 (1947)). Thus, the Court concluded that the FLSA covered *"only those who engage in those activities in expectation of compensation."* 471 U.S. at 302 (emphasis added).

## IV. THE INVALIDITY OF THE DEPARTMENT OF LABOR REGULATIONS DEFENSE.

Plaintiffs also assert that Affirmative Defense 43 ("Plaintiff's claims are barred because the regulations promulgated by the United States Department of Labor under the Fair Labor Standards Act are invalid") is "insupportable by both fact and legal precedent, and is spurious at best." Motion, ¶ 11. Not only is Plaintiffs' argument erroneous, but both the Department of Labor ("DOL") and courts have recognized the invalidity of these regulations.

As discussed above, entertainers earn their income by charging mandatory entertainment fees for personal entertainment performances, and also receive "tips" above and beyond those charges. At least two courts have recognized that even if exotic dancers are found to be employees, the mandatory dance fees that the entertainers retained can be used to offset any minimum wage obligations. *See* **Matson v. 7455, Inc.**, 2000 WL 1132110 *6 (D. Or. January 14, 2000) (district court finding, under an FLSA claim such as the one at issue here, "that the fixed fees collected by the plaintiff in exchange for table dances are not 'tips,'" and that the club at issue there was entitled to a "set off" of the mandatory dance charges in the event that the entertainers are found to be employees and that wages were therefore due); and **Moody v.**

6

**Razooly**, 2003 WL 464076 *7 (Cal. App. February 25, 2003) (court concluded that "special dance fees" were not tips and that the defendant employer was entitled to credit those fees against any minimum wages found to be due; noting that a contrary result would result in a "windfall" for the plaintiff).

Plaintiffs cite, however, **Reich v. Priba Corp.**, 890 F.Supp. 586, 594-95 (N.D. Tex. 1995), which relies upon **ABC/York-Estes Corp**, 157 F.R.D. 668 (N.D. Ill. 1994) ("**York-Estes**"), for the proposition that in certain factual circumstances, mandatory dance fees -- under the interpretation of the federal regulations at issue -- do not permit such an offset. Historical review reveals, however, that the regulations underlying **Priba** and **York-Estes** have not been valid for over 35 years.

Prior to 1974, the FLSA permitted employers to require that employees turn over all of their tips to the employing business, which could then utilize those monies to pay the employee the minimum wage owed. Courts have referred to this as the "hourly wage method," or as "tip back agreements," which were specifically sanctioned by the Regulations. In 1974, however, amendments to the statutory "tip credit" found in 29 U.S.C. § 203(m)[2] arguably prohibited the hourly wage method.[3] Yet, the Regulations were *never* amended to account for these revisions, and they conflict with the current statutory scheme in numerous regards.

First, the Regulations begin by setting forth, *verbatim*, the FLSA tipping provisions upon

---

[2]  Specifically, in order to be able to pay a "tip credited" wage, that provision now requires that "all tips received by such employee have been retained by the employee..." (except for mandatory tip-pooling arrangements among employees). See 29 U.S.C. § 203(m).

[3]  Previously, "[i]n businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding,* belong[ed] to the recipient. Where, however, [such] an arrangement is made..., *in the absence of statutory interference, no reason is perceived for its invalidity.*" **Williams v. Jacksonville Terminal Co.**, 315 U.S. 386, 397 (1942) (internal citations omitted, emphasis and clarification added). *Cf.* **Cumbie v. Woody Woo**, 596 F.3d 577 (9th Cir. 2010).

7

which they are based; those being §§203(m) and (t). But the Regulations continue to quote statutory language *that hasn't existed for over 36 years*. Compare 29 C.F.R. §531.50(a) and (b), *with* 29 U.S.C. §§203(m) and 203(t). Second, the Regulations are replete with references to the fact that the workers subject to the tip-credit provisions are those who earn tips in excess of *$20.00* per month, whereas the current statutory requirement (203(t)) sets the limit at *$30.00* per month.[4] Third, while the Regulations place the maximum tip credit at 50% of a worker's wage, the current statutory provision under §203(m) actually allows for a tip credit of up to *71%*.[5] Fourth, the Regulations continue to contain extensive references to the permissibility of the hourly wage method where an employer can require an employee to pay over all of his or her tip income to the business.[6] In fact, the greatest concentration of references condoning the hourly

---

[4] See, e.g., §§532.51; 531.56 (six references); 531.57 (four references); and 531.58 (two references).

[5] Whereas the 1966 version of §203(m) established the 50% limit (*see* Pub.L. 89-601, §101(a)), the current statutory provision establishes the tip-credited wage as that set "on August 20, 1996," which was $2.13 per hour. *See e.g.*, **Bernal v. Vankar Enterprises, Inc**., 579 F.Supp.2d 804, 807 (W.D. Tex. 2008). Since the current minimum wage is $7.25 per hour (29 U.S.C. §206(a)(1)(C)) and the tip-credited wage is $2.13 per hour, the current permissible tip credit is *71%*. Yet, the Regulations continue to repeatedly reference a 50% tip credit. *See, e.g.*, 29 C.F.R. §§531.55(b) ("In such instances, there is no applicability of the 50-percent limitation on tip credits provided by section 3(m)"); 29 C.F.R. §531.56(d) ("It does not govern or limit the determination by the employer or the Secretary of Labor of the appropriate amount (up to 50 percent of the minimum wage) of wage credit under section 3(m) that may be taken for tips"); 29 C.F.R. §531.59 ("…the amount paid to a tipped employee by an employer is deemed to be increased on a count of tips by an amount which cannot exceed 50 percent of the minimum wage applicable to such employee…," and: "The credit allowed on a count of tips may be less than 50 percent of the applicable minimum wage; it cannot be more"); and 29 C.F.R. §531.60(a) ("In accordance with section 3(m), a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer (Not in excess of 50 percent of the applicable minimum wage)…").

[6] *See, e.g.*, 29 C.F.R. §§531.52 ("***In the absence of an agreement to the contrary between the recipient and a third-party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.*** Only tips actually received by an employee as money belonging to him which he may use as he chooses *free of any control by the employer*, may be counted in determining whether he is a 'tipped employee' within the meaning of the Act and in

8

wage method in the Regulations is found in 29 C.F.R. §531.55; the very section relied upon by **York-Estes** and **Priba**.

Shortly after the 1974 amendments to §203(m), the DOL issued a series of Opinion Letters clarifying that the hourly wage method permitted under the Regulations had not survived the statutory revisions. WH-310, 1975 WL 40934 (DOL Wage-Hour) (Ex. A), observed that "[t]he 1974 amendments were added to make clear . . . that the parties may not agree to an arrangement where the employee's tips are used to satisfy the employer's minimum wage obligations." **Id**. at p. 1 (citing **Brooklyn Savings Bank v. O'Neil**, 324 U.S. 697 (1945); and S. Rprt. No. 93-690 (93rd Cong. 2nd Sess.), pp. 42-43). The Administrator further noted that *"such portions of 29 CFR 531.55[7], which seem to permit [such a system], have been superseded by the 1974 amendments."* **Id**. at p. 2 (emphasis and clarification added). *See also* WH-321, 1975 WL 40945 (DOL Wage-Hour) (Ex. B).

This conflict between the revised statute and the pre-existing Regulations was best explained in **Winans v. W.A.S., Inc.**, 772 P.2d. 1001 (Wash. 1989), where a unanimous

---

applying the provisions of section 3(m) which govern wage credits for tips"); 29 C.F.R. §531.55(a) ("Likewise, *where the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment*. Even though such amounts are not collected by imposition of any compulsory charge on the customer, plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the *employer's property*, not his, and do not constitute tip income to the employee"); 29 C.F.R. §531.55(b) ("Also, *if pursuant to an employment agreement the tips received by an employee must be credited or turned over to the employer, such sums may, after receipt by the employer, be used by the employer to satisfy the monetary requirements of the Act*"); and 29 C.F.R. §531.59 ("*Under employment agreements requiring tips to be turned over or credited to the employer to be treated by him as part of his gross receipts*, it is clear from the legislative history that the employer must pay the employee the full minimum hourly wage, since for all practical purposes the employee is not receiving tip income") (all emphasis added).

[7] Again, it is, indeed, this Regulation upon which **York-Estes** and **Priba** are based.

9

Washington Supreme Court noted that the provisions of the FLSA underlying the tip regulations had been amended, and referenced the Opinion Letters of the DOL discussed above that "explicitly find the regulations *invalid*." **Id**. (emphasis added).

> In Wage and Hour Op. Letter WH-310 (Feb. 18, 1975), Administrator Murphy found: "The interpretations prescribed in 29 C.F.R. 531.50 through 531.60 were issued pursuant to the Act as it was before the 1974 amendments, *and have no effect to the extent that they are in conflict with the amended Act*. Revisions of these C.F.R. sections are being prepared which will incorporate the changes resulting from the 1974 amendments.

**Id**. (emphasis added).

But, as the court observed, the "*new regulations never came out.*" **Id**. (emphasis added). Succinctly, the Washington Supreme Court then concluded that, "*on their face, the regulations interpret a statute that is no longer in effect…. Because the regulations are inconsistent with the present version of the statute, they are invalid.*" **Id**. at 1006-07 (emphasis added).

Consequently, for purposes of the Plaintiffs' motion to dismiss, the affirmative defense at issue is not legally insufficient so as to require dismissal thereof.

Dated:  November 30, 2010                                  Respectfully submitted,

THE LAW OFFICES OF BRIAN W. BISHOP

*s/Brian W. Bishop*
BRIAN W. BISHOP
LAW OFFICES OF BRIAN W. BISHOP
Co-Counsel on behalf of Defendants
115 Wild Basin South, Suite 106
Austin, Texas 78746
Telephone: (512) 327-5121
Facsimile: (512) 327-5122
Email:  brian@bbishoplaw.com

Bradley J. Shafer (MI Bar No. P36604)*
Matthew J. Hoffer (MI Bar No. P70495)*
SHAFER & ASSOCIATES, PC
Co-Counsel on behalf of Defendants
Lansing, Michigan 48906-2110
3800 Capital City Boulevard, Suite 2
(517) 886-6560
Fax:  (517) 886-6565
brad@bradshaferlaw.com
***Pending Admission/Pro Hac Vice Admission**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed Defendants' Response to Motion to Strike or Dismiss Defendants' Affirmative Defenses with the United States District Court for the Western District of Texas and thereby upon all parties.

Dated: November 30, 2010               *s/Brian W. Bishop*
                                      BRIAN W. BISHOP
                                      LAW OFFICES OF BRIAN W. BISHOP
                                      Co-Counsel on behalf of Defendants
                                      115 Wild Basin South, Suite 106
                                      Austin, Texas 78746
                                      Telephone: (512) 327-5121
                                      Facsimile: (512) 327-5122
                                      Email: brian@bbishoplaw.com

# EXHIBIT A

Westlaw.

1975 WL 40934 (DOL WAGE-HOUR) Page 1

1975 WL 40934 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

WH-310

February 18, 1975

\*\*\*

This is in reply to your letter of August 7, 1974, to which was attached a prototype employment agreement identified as "Attachment B". You ask whether the terms of this agreement are prohibited by the 1974 amendments to section 3(m) of the Fair Labor Standards Act. The provisions of "Attachment B" are:
> I. It is agreed that amounts presented by customers as tips belong to the employer and will be turned over to the employer daily.
> II. Employer agrees to pay employee $2.00 per hour for the first 48 hours worked each week.
> III. Employer further agrees to pay employee $3.00 per hour for each hour worked in excess of 48 hours each week.
> IV. It is understood that the employee will receive as additional salary an amount which equals the excess of tips turned in less the amounts paid under II & III.

Our opinion letter dated June 21, 1974, to which you refer as "Attachment A" in your letter, states the official interpretation of the Wage and Hour Division concerning retention of tips by employees, and the effect of the acquisition of tips by the employer on his obligations under the Act as amended effective May 1, 1974. The interpretations prescribed in 29 CFR 531.50 through 531.60 were issued pursuant to the Act as it was before the 1974 amendments, and have no effect to the extent that they are in conflict with the amended Act. Revisions of these CFR sections are being prepared which will incorporate the changes resulting from the 1974 amendments.

An interpretation of the law permitting the use of a system such as that set forth in Attachment B would have the effect of nullifying Section 3(m) as amended. Under the proposed plan, instead of using the employee's tips for paying a maximum of 50% of the minimum statutory rate, the employer would use his employee's tips to satisfy as much as 100% of the monetary requirements of the Act. Thus, if the employee received $2.00 an hour or more in tips, the employer would pay him simply by returning to him his tips. The amendments to section 3(m) of the Act would have no meaning or effect unless they prohibit agreements whereby tips are credited or turned over to the employer for use by the employer in satisfying the monetary requirements of the Act. The 1974 amendments were added to make it clear that an employee who receives $20 a month in tips is a "tipped employee" under Section 3(t), and that the parties may not agree to an arrangement where the employee's tips are used to satisfy the employer's minimum wage obligation. See Brooklyn Savings Bank v. O'Neil, 324 U. S. 697; see also attached copy of pages 42 and 43, Senate Report, No. 93-690 (93rd Cong., 2nd Sess.).

As mentioned in the Administrator's Opinion letter of June 21, 1974, an employer may not take advantage of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Section 3(m) by using any part of his employee's tips as a credit to meet his monetary obligation unless the employee is permitted to keep all tips. If the employer requires his employee to turn all or part of his tips over to him, then, in order to come into compliance, such employer must return the tips and pay the full statutory minimum wage. As pointed out above, such portions of 29 CFR 531.55, which seem to permit a system such as that proposed in Attachment B, have been superseded by the 1974 amendments.

Under the prototype employment agreement the employee does not retain his tips and, as spelled out in the opinion letter and reiterated in the paragraph preceding, the tip credit allowed to the employer of a tipped employee can not be taken. Nor will the intent of the Act be satisfied by the employer's use of the employee's income to meet his statutory obligation to pay wages at a rate not less than the minimum standard, and overtime pay for hours in excess of the statutory weekly standard.

A compulsory service charge imposed on a customer by an employer and collected by the employer directly from the customer is not a tip and may not be counted as a tip in applying the provisions of Section 3(m) and 3(t). Such a charge is income to the employer, and the employee is not a "tipped employee" when his wages are paid from such a fund. While such a service charge is not prohibited by Section 3(m), that section is inapplicable in such a case, and the employer is obligated to pay the full minimum wage. See 29 CFR 531.55(a), first two sentences.

If you have any further questions, you may wish to contact the Wage and Hour Division office at Room 3527 Federal Office Building, 700 West Capitol Avenue, Little Rock, Arkansas 72201 (telephone: 378-5292). The people at that office will be pleased to assist you in any way possible.

Sincerely,
Betty Southard Murphy
Administrator
Wage and Hour Division

Enclosures

1975 WL 40934 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Westlaw.

1975 WL 40945 (DOL WAGE-HOUR)

Page 1

1975 WL 40945 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

WH-321

April 30, 1975

\*\*\*

This will reply to your letter of December 4, 1974, addressed to \*\*\*, our former Administrator who now heads the National Labor Relations Board. In it, you request reconsideration of the opinion contained in my letter to you of October 3, 1974, and an earlier unpublished letter of June 21, 1974, to the effect that Section 3(m) of the Fair Labor Standards Act does not permit an employer having tipped employees to require, by contract or otherwise, that such employees turn over to him their tips in an amount equal to the statutory minimum, and then use such kickbacked sums to "pay" the employees at or above the bare minimum.

Careful consideration has been given to the material cited in support of your contrary view concerning the effect of amended Section 3(m), but I find the pertinent legislative history to be much more persuasive. This history makes it clear that the term "wages" as defined in Section 3(m) does not include "tips," except to the extent that employers having tipped employees may, under certain circumstances, count tips as wages but only up to 50 percent of the applicable minimum.

To understand the significance of the 1966 and 1974 amendments to Section 3(m), it is helpful to review the situation as it existed with respect to tipped employees before that section was amended. Thus, as early as 1942, it had been held that employers having tipped employees could require them to make a daily accounting of their tips in exchange for which the employer would guarantee them at least the minimum prescribed by the Act. See, for example, Williams v. Jacksonville Terminal Company, 315 U.S. 386, where, in so holding, the Supreme Court noted that Section 3(m) made no reference to "tips."

Now, however, the situation of a "tipped" employee is far different. As pointed out in the Senate Report which accompanied the Fair Labor Standards Amendments of 1974, the Congressional purpose in amending Section 3(m) was to make it clear "that an employer could not use the tips of a 'tipped employee' to satisfy more than 50 percent of the Act's applicable minimum wage" (S.Rept. 93-690, p. 43) and to insure "that all tips received by such employee must be retained by the employee" (ibid.), except to the extent that there is an arrangement for the "pooling of tips among employees who customarily and regularly receive tips" (29 U.S.C. 203(m)).

Although, as you suggest, Section 3(m) now provides an exception from the Act's minimum wage requirements, it is a limited exception which permits employers to take a tip credit against the applicable minimum in an amount not to exceed 50 percent of such minimum. If an employer should elect not to avail himself of this limited exception, he would have to pay his tipped employees in accordance with the Act's minimum wage stand-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ards and, in addition, allow them to keep their tips since, as pointed out in 29 CFR 531, "A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." This section of our interpretation bulletin was expressly approved in S.Rept. 93-690, p. 42.

It is realized that our position as expressed in certain other parts of 29 CFR 531 is not in line with the opinion given you in my letter of October 3, 1974, and reaffirmed in this communication, but those parts of our interpretative bulletin have been superseded by Section 3(m) as modified in 1974 and the Department is in the process of revising its bulletin.

Sincerely,
Warren D. Landis
Acting Administrator
Wage and Hour Division

1975 WL 40945 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.