UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MONICA RAFEEDIE, et al,<br><br>         Plaintiffs,<br>    vs.<br><br>L.L.C., Inc., and W.F.K.R., Inc.,<br><br>         Defendants. | Civil Action No:  1:10-cv-743-LY<br><br>**HON. LEE YEAKEL** |

**DEFENDANTS' MOTION TO COMPEL PRODUCTION OF TAX RETURNS
AND FINANCIAL INFORMATION**

BRIAN W. BISHOP
LAW OFFICE OF BRIAN W. BISHOP
Counsel for Defendants
115 Wild Basin Road, Suite 106
Austin, Texas 78746
(512) 327-5121
(512) 327-5122
brian@bbishoplaw.com

BRADLEY J. SHAFER (MI Bar No. P36604)
MATTHEW J. HOFFER (MI Bar No. P64147)
SHAFER & ASSOCIATES, P.C.
Co-Counsel for Defendants
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
(517) 886-6560
(517) 886-6565
info@bradshaferlaw.com

ROBERT B. DEBES, JR.
DEBES LAW FIRM
Counsel for Plaintiff(s)
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
(713) 623-0900
bdebes@debeslaw.com

NOW COME Defendants L.L.C., Inc., and W.F.K.R., Inc., by and through counsel and pursuant to Fed. R. Civ. P. Rule 37, hereby move this Honorable Court for entry of an order compelling Plaintiffs to produce their tax returns and other financial records specified below. In support, the Defendants state as follows.

**INTRODUCTION**

Plaintiffs who are unwilling or unable participate in discovery have no place in this action. Defendants have been seeking to discover certain Plaintiffs' tax records since April of 2011. Nevertheless, Plaintiff still cannot confirm which of them will actually be providing tax returns, or when those returns will be provided.

Defendants have also requested the plaintiffs provide other financial information such as bank statements, credit applications, and releases for their credit reports. Plaintiffs have objected to producing any such information. With the exception of Plaintiff Sophea Trotta, the other seven (7) discovery respondents have produced a total of one (1) page of documents in response to Defendants' requests for production. This motion to compel now follows.

**FACTS**

On or about April 11, 2011, Defendants L.L.C., Inc. ("LLC") and W.F.K.R., Inc. ("WFKR") served their Notice of Taking Deposition and Duces Tecum Requests (Ex. 1) (the "Deposition Notice") upon Plaintiffs Sophea Trotta and Victoria Chhang. Ms. Trotta's deposition took place on April 26, 2011, at which time Plaintiffs served upon Defendants "Plaintiffs' Objections to Subpoena Duces Tecum" (Ex. 2) (the "Objections to Duces Tecum"). The Objections to Duces Tecum sets forth that Ms. Rafeedie, the named representative of a then uncertified 29 U.S.C. § 216(b) collective, on behalf of Plaintiffs Sophea Trotta and Victoria

Chhang,[1] objects to the production of specified categories of documents set forth in the Deposition Notice.  Neither Ms. Rafeedie nor Ms. Trotta sought an order quashing the Notice of Deposition or the duces tecum requests therein.

Plaintiffs' Objections to Duces Tecum (Ex. 2, p. 1) specifically objected to Defendants' request (Deposition Notice, Ex. 1, p. 5) that Trotta produce "[c]opies of your 2007, 2008, 2009, and 2010 state and federal tax returns and all documents utilized in the preparation for such returns."

On April 21, 2011, Defendants served identical Rule 33 "Interrogatories" and Rule 34 "Requests for Production" (the "Request(s)") upon Plaintiffs Vanessa Odreman[2], Monica Rafeedie, Melissa Chavez, Sophea Trotta, Chanlekha Meaux, Amanda Grimes, Stephanie Gise, Ashlee Strickland, and Ana Olivo (simply "Plaintiffs" herein) (certificates of service attached as Ex. 3).  Regarding Plaintiff's tax records, the Requests sought:

> 30.   Each and every one of your local, state and federal income tax returns, including all attachments and schedules thereof, for the calendar years 2005 through 2010.
>
> 31.   Any and all documents used in the preparation of your local, state and/or federal income tax returns for the calendar years 2005 through 2010, including any and all documents used in the preparation of any and all attachments and schedules thereof.
>
> 32.   Any and all documents you submitted to, or received from, any accountant, tax preparer, or other person, retained or consulted by you in

---

[1]   Ms. Chhang was noticed for deposition two days later on April 28, 2011.  Because Ms. Chhang was subject to Defendants' then outstanding motions to dismiss or to compel arbitration (Doc.'s 55 and 60), the parties agreed to limit Ms. Chhang's deposition to matters relating to the authenticity of her signed contract containing the agreement to arbitrate.  For the same reason, Defendants withdrew their duces tecum requests to Ms. Chhang prior to the deposition.

[2]   The Request for Production served upon Ms. Odreman was withdrawn when a review of her file uncovered that, on October 1, 2010, she had signed a contract containing an agreement to arbitrate.  *See* Doc.s 81 and 81-1.

2

connection with the preparation of your local, state and/or federal income tax returns for the calendar years 2005 through 2010.

      33.    Any and all documents that you have either received from, or sent to, any local, state, or federal taxing authority, agency, subdivision, or department, for the years 2005 through 2010.

      53.    Provide a completed, signed copy of Form 4506, attached hereto.

      54.    Provide a completed, signed Form 4506-T, attached hereto;
          a.    Listing years 2005, 2006, 2007, and 2008; and
          b.    Listing years 2009 and 2010.

*See, e.g.,* Sophea Trotta's Answers to Defendants' First Set of Requests for Production, Ex. 4; Sophea Trotta's Response to Request for Production No.s 53-55, Ex. 5.

Defendants' Interrogatories asked:

9.    For each and every local, state and federal income tax return that you filed each year from January 1, 2005, to the present:

    a.    Identify each and every person who provided you assistance in the preparation or filing of such returns;

    b.    State the date each such return was filed or mailed;

    c.    Identify each and every document used, or relied upon, in the preparation of such return;

    d.    State the amount of any payment made by you, or the refund received by you, in connection with each such return.

*See* Sophea Trotta's Answers to Defendants' First Set of Interrogatories, Ex. 6.

Plaintiffs did not provide documents or answers, but stated:

Plaintiff objects to this request on the basis that it is overly broad, burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, Plaintiff objects to this request to the extent it is against public policy and constitutes an unnecessary disclosure of personal and private information.

*See* Ex.'s 4, 5, and 6, as referenced above.

3

Plaintiffs raised these same objections regarding Defendants' requests for other financial records (that are now subject to this motion), including:

> 12. Any and all documents relating to the income you earned while performing as an exotic dancer at establishments *other* than at Perfect 10 and/or Sugar's, between October 6, 2005, and the present.
>
> 13. Any and all documents stating, documenting, memorializing, identifying, or relating to, any monies that you earned from employment or self employment from October 6, 2005, to the present.
>
> 16. Any and all documents stating, demonstrating, memorializing, or identifying any monies that you paid to, or received from, any establishment other than Perfect 10 or Sugar's, in regard to any performances or "work" by you as an exotic dancer during the period from October 6, 2005, to the present.
>
> 23. Any and all documents stating, demonstrating, memorializing, or identifying, any and all monies that you received as an exotic dancer from patrons at any establishment, other than at Perfect 10 and at Sugar's, from October 6, 2005, to the present.
>
> 24. Any and all documents stating, demonstrating, memorializing, or identifying, any source or sources of income that you have received from October 6, 2005, to the present, and the amount of income received from each such source.
>
> 40. Any and all any documents relating to any accounts that you maintained from October 6, 2005, to the present, either individually or jointly, in any bank, savings and loan, credit union, or brokerage house (including but not limited to balance and transaction statements, transaction notices, deposit slips, and withdrawal slips).
>
> 41. All statements from October 6, 2005, to the present, for any credit card or debit card that you possessed, either individually or jointly, during that time period.
>
> 55. Provide a completed, signed copy of Authorization to Release Information – 15 U.S.C. § 1681(a)(2), attached hereto.

Ex. 6.

Likewise, Plaintiffs objected to answering the following Interrogatories:

> 6. For each and every bank, savings or checking account that you have opened or maintained since October 6, 2005 (whether individual or joint), state the name of financial institution, its address, the account number, and the

4

dates the account was maintained. For any joint account, identify the individual with whom you jointly opened or maintained such account.

      7.    State each and every source of income you have received since October 6, 2005, and state the amount received from each source of income.

      10.    Have you, since October 6, 2005, applied for any type of credit, loan, or installment payment (including, but not limited to applications for credit cards; applications for debit cards; mortgage applications; applications for home improvement loans; applications for home equity loans; application for installment sales; applications relating to land contracts; applications relating to the lease of real property; applications related to vehicle leasing; and any applications for loan(s), credit, or installment payments relating to the purchase or leasing of any real and/or personal property, including but not limited to any vehicles, appliances, or furniture)? If so, with regard to each such application:

    a.    State the name, address, and telephone number of the person, financial institution and/or other entity to whom the application was made or submitted;

    b.    Identify each and every document used by you in preparing the application;

    c.    State the amount of the loan, the line of credit, or the credit limit; as applicable;

    d.    State whether the application was approved or denied.

      11.    As to each credit card you have opened or maintained since October 6, 2005, state: The name, address, and phone number of the issuing financial institution; the type of credit card (*e.g.* Visa, Master Card, Discover, etc.); the credit card account number or numbers, and the current expiration date of the card if you presently maintain the credit card.

Ex. 6.

In May of 2011, in response to Plaintiffs' requests for extra time to answer discovery, Defendants asked them to confirm they would be maintaining their objections to producing tax records. Email Correspondence of May 18-20, 2011, Ex. 7, pp. 1-2. Plaintiffs maintained their objection and instructed, "I understand if you need to file your motion to compel on that issue." Then, on June 7, after receiving responses that neglected to provide any response to Requests 53-

5

55, Plaintiffs confirmed they would be producing neither the tax return releases nor the releases for credit reports sought by those requests. Email Correspondence of June 7, 2011, Ex. 8, p. 1.

Nevertheless, Defendant continued to work with Plaintiffs to obtain tax returns without filing a motion to compel, and sometime before July 11, the parties agreed that the tax returns would be produced (subject to objections, subject to a protective order, and with certain information redacted). On July 11, Defendants requested, "Please continue to collect the tax return materials we have discussed, so that they may be provided promptly upon entry of the protective order." Emails of July 11-12, 2011, Ex. 9, p. 2. On July 12, Plaintiffs confirmed that they had already begun to collect tax returns. **Id**. at p. 1.

The Protective Order was entered on July 13, 2011. Doc. 102. On, August 1, Defendants inquired as to when they would be receiving the tax returns. Emails of August 1-2, Ex. 10, p. 5-6. Plaintiffs could provide no definite response. Instead, counsel stated that "if it looks like I won't be able to get you some of them, I'll let you know so that you can do whatever you feel you need to do." Defendants then requested that Plaintiffs provide those returns presently in counsel's possession by August 5, 2011, and provide a firm date when the remainder would be provided. **Id**. at p. 2 (also stating that without firm dates, "I will have no choice but to file the motion to compel"). As a substitute, counsel could only say "I remain *hopeful* that I will be able to send you *most* of the girls' tax returns *in the near future*." **Id**. at p. 1.

Since Plaintiffs cannot confirm that all of them will be providing tax return or specify a date by which the returns will be provided, Defendants must file this Motion to Compel.

Plaintiffs have flat refused to provide the documents and things called for by Requests 12, 13, 16, 23, 24, 30, 31, 32, 33, 40, 41, and 55; or the information called for by Interrogatories 6, 7, 9, 10, 11. Defendants must now file this Motion to Compel.

6

## ARGUMENT

The tax and financial information requested by Defendants is relevant for a number of reasons and must be produced. The information is relevant to, *inter alia*: 1) whether Plaintiffs regarded themselves to be self-employed individuals; 2) what other sources of income Plaintiffs had which would suggest they were, as a matter of economic reality, in business for themselves and not dependent upon Defendants; 3) Plaintiffs' opportunity for profit or loss; 4) the amount of mandatory fees for private dances collected and retained by Plaintiffs, which is relevant to Defendants' affirmative defenses *and* counterclaims; 5) whether Plaintiffs were deprived of a minimal standard of living, which is relevant to determine whether Plaintiffs should be awarded liquidated damages under 29 U.S.C. § 260; 6) the amount of damages suffered by Plaintiffs; and 7) if Plaintiffs are ultimately determined to be employees, the amount of withholdings due according to the Internal Revenue Code on any wage payment to be made.

**I.     STANDARDS FOR THE PRODUCTION OF TAX RETURNS.**

"Tax returns are not privileged." **F.D.I.C. v. LeGrand**, 43 F.3d 163, 172 (5th Cir. 1995). Yet, the Fifth Circuit has expressed some reluctance in ordering the disclosure of tax returns in the regular course of discovery. **Natural Gas Pipeline Co. of America v. Energy Gathering**, 2 F.3d 1397, 1411 (5th Cir. 1993). Some district courts in Texas have applied a two-part burden-shifting test to determine whether tax returns should be produced: 1) the party seeking the returns must show they are relevant; and 2) the burden then shifts to the party opposing production to demonstrate that the information sought is "not otherwise readily available." *See, e.g.*, **Walker v. Rent-a-Center**, 2006 WL 2860553, at *2 (E.D. Tex. Oct. 3, 2006). Generally, once relevance is established, the burden falls on resisting party to justify nondisclosure with "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." **In

7

**re Terrra Int'l, Inc.**, 134 F.3d 302, 306 (5th Cir. 1998) (discussing a protective order). Whether or not the two-part burden-shifting test is applied here, it is clear that the Tax Returns and other information sought by Defendants are relevant and discoverable.

## II.    THE TAX RETURNS AND FINANCIAL DOCUMENTS ARE RELEVANT AND MUST BE PRODUCED.

The question of whether tax returns are relevant and should be produced was directly addressed and resolved in **Canada v. Hotel Development-Texas, LTD**, 2008 WL 3171940 (N.D. Tex., July 30, 2008). That case also involved an exotic dancer who claimed to have been misclassified as an independent contractor and who sought "wages" under the Fair Labor Standards Act ("FLSA"). **Id**. at *1. The Court found that the plaintiff's tax information, which would include income earned from other sources, was relevant to determining whether she was, as a matter of economic reality, an employee of the defendant or in business for herself and ordered their production. **Id**. at *2-*3.

This holding is consistent with that of other courts in FLSA "misclassification" cases. In **In re FedEx Ground Package System**, the court held that the collective action plaintiffs' tax returns must be produced because, the returns provided important information about the worker's opportunity for profit or loss:

> ***The Fifth Circuit considers such information relevant*** because the focus under this prong is twofold: the court looks at the hiring party's ability to dictate the hired party's opportunity for profit or loss, as well as the hired party's ability to control profit or loss based on his or her skill, initiative, ability to cut costs, and understanding of the relevant industry. **Herman v. Sixty-Minutes Delivery Service, Inc.**, 161 F.3d 299, 304 (5th Cir. 1998).
>
> \*   \*   \*
>
> To the extent the plaintiffs' tax returns can show some plaintiffs were able to maximize profits by . . . utilizing business-associated tax benefits, or through other sources of income, this financial information can be relevant for showing the plaintiffs' earnings didn't necessarily depend on the defendants, but upon their

> individual business judgment and initiative. *See* **Herman v. Express Sixty-Minutes**, 161 F.3d at 304. It is unclear the point source behind the divergent earnings, ***but by claiming to be an employee under the FLSA*** and the FMLA***, the plaintiffs have their income at issue,*** *and because the parties dispute the nature of their business relationship, the court finds the information contained in the plaintiffs' tax returns to be* <u>*both relevant and material*</u> *to the issues in this case*.

2006 WL 3755311, at *5 (emphasis added); **Id**. at *6 (FLSA plaintiffs required to "produce their tax returns and other related financial information"). *See also*, **Eastern Auto Distributors, Inc. v. Peugeot Motors of America**, 96 F.R.D. 147, 149 (D. Va. 1982) ("Where the income of the party to the litigation is an issue, income tax returns provide what, in this court's opinion, may be the ***best source of complete and competent information*** as to that party's income") (emphasis added); **Rubenstein v. Kelven**, 21 F.R.D. 183 (D. Miss. 1957) (a party who "chooses to litigate an issue upon which his tax returns may cast ***significant light*** cannot claim that these returns contain confidential information. . .") (emphasis added); **Poulos v. Naas Foods, Inc.**, 959 F.2d 69, 74-75 (7th Cir. 1992) ("Tax returns in the hands of a taxpayer are not privileged" . . . Plaintiff "himself put the level and sources of his income at issue by claiming to be a dealer and by claiming damages. . .").

In **Carrell v. Sunland Const. Inc.**, the Plaintiffs tax returns played an important role in the Fifth Circuit's analysis. It affirmed the trial court's finding that welders were independent contractors and not FLSA employees, reasoning:

> Sunland exerted some control over the Welders' opportunity for profits by fixing the hourly rate and the hours of work. Yet, the tax returns of Carrel indicate that the Welders profits also depended on their ability to control their own costs. Moreover, the Welders worked from many companies in each of the years relevant to the dispute.

998 F.2d 330, 334 (5th Cir. 1993) (also distinguishing **Robicheaux, v. Radcliff Material, Inc.**, 697 F.2d 662, 667 (5th Cir. 1983) (welders found to be FLSA employees)).

9

The Deposition of Sophea Trotta sheds light on some information actual tax returns will provide. Ms. Trotta took a sophisticated approach to her taxes, taking every deduction available to her business enterprise. She deducted "tip-outs" to managers and DJ's as business expenses. Deposition of Sophea Trotta, p. 51:25-52:9 (Ex. 11, pp. 3-4). She also took business deductions for costumes, makeup, shoes, hair care, nail care, cosmetic surgery, and transportation. Trotta Dep., p. 121:16-122:12 (Ex. 11, pp. 5-6). The production of tax returns is likely to uncover that other entertainers took a business-savvy approach to their business activities at defendants' establishments and at other establishments. Others may show the opposite, which would then tend to show those individuals are not similarly situated for purposes of the economic realities test. The information is relevant either way.

The tax returns and the other documents reflecting income are additionally relevant to Defendants' defense that the mandatory dance fees the entertainers collected are service fees that can be used to offset any FLSA wage obligations. *See, e.g.,* **ABC/York-Estes**, **Reich v. ABC/York-Estes Corp.**, 1997 WL 264379, at *4 (N.D. Ill. May 12, 1997) (FLSA dancer misclassification case) ("An employer may offset the full amount of a service charge against its minimum wage liability"); **Matson v. 7455, Inc.**, 2000 WL 1132110 at *6 (D.Or. Jan 14, 2000) (dancer misclassification case; [n]o limitation in the F.L.S.A. statute exists precluding the use of such fixed fees in calculation of an employee's minimum wage"). Likewise, these amounts are relevant to Defendants counterclaims that the dance fees must be returned to the clubs, *see* **Doe v. Cin-Lan, Inc.**, 2010 WL 726710 (E.D. Mich. 2010) (refusing to dismiss legal and equitable compulsory counterclaims seeking return of mandatory dance fees and noting the counterclaims "seek only to prevent a windfall to" the dancer in the event she succeeded on her FLSA and state wage claims). Defendants' business records, unfortunately, largely did not track cash

10

transactions between patrons and Plaintiffs. Disclosure of Plaintiffs' tax returns is a fair and reasonable method of discovering these important amounts.

Disclosure of Plaintiffs' banking records, credit applications, and credit reports are relevant for all of the same reasons. Defendants have the formidable task of determining the amount of service charges paid in cash by patrons to entertainers. Plaintiffs may have declared this information on tax returns or they may have deposited these funds into a bank account. Even if not, Plaintiffs' credit card records may show substantial charges that were regularly paid off.

In addition, Plaintiffs' lease, loan, or credit applications are likely to include representations by Plaintiffs regarding their income and sources of income. Since Plaintiffs have an interest in maximizing their income for credit-type applications, and minimizing income for taxation purposes, it is possible that credit-type applications will uncover income and sources of income (especially cash income) not disclosed in tax returns. And, in the likely event that Plaintiffs cannot recall the particulars of their credit applications over the past few years, Plaintiffs' credit report will indentify the sources of this information.

Defendants can use this information to quantify the amount of service charges that offset wage obligations. Further, as confirmed by the decisions **Canada** and **In re FedEx**, 2006 WL 3755311, at *5 ("financial information can be relevant for showing the plaintiffs' earnings didn't necessarily depend on the defendants") all of this information is relevant to the application of the economic realities test to determine whether Plaintiffs are employees or independent contractors. And, of course, Plaintiffs necessarily placed their income at issue by filing  minimum wage FLSA claims. **In re FedEx**, 2006 WL 3755311, at *4 (citing **Poulos**, 959 F.2d at 75).

The returns are also relevant to determining, if Plaintiffs are successful, whether the Court should, and in what amount, award liquidated damages pursuant to 29 U.S.C. § 216(b). Under 29 U.S.C. § 260, it is within the "sound discretion" of the district court to award no or reduced liquidated damages if the Defendants' actions were reasonable and in good faith. *See, e.g.*, **McClanahan v. Mathews**, 440 F.2d 320, 322 (6th Cir. 1971). The purpose of liquidated damages is to restore a destitute plaintiff to the minimal standard of living minimum wages are designed to secure. **Brooklyn Sav. Bank v. O'Neil**, 324 U.S. 687, 707 (1945). Plaintiffs' income levels and sources are relevant to the question of liquidated damages. For example, Ms. Trotta claimed to earn forty to forty-five thousand per year (Trotta Dep., p. 20:24, Ex. 11, p. 2) and reports performing 10, 44, 27 and 75 dates in the years 2007, 2008, 2009 and 2010, respectively ("Sophea's Business" Records, (Ex. 12)). Certainly liquidated damages are not necessary to restore Ms. Trotta to the minimal standard of living envisioned by the framers of the FLSA.

In addition, Defendants have also sought documents used in the preparation of Plaintiffs' tax returns (Ex. 5, Request 31), documents exchanged with a tax preparer (Request 32), and documents exchanged with a taxing authority (Request 33). These items are neither "tax returns" nor subject to any privilege. **Pasadena Refining System, Inc., v. U.S.**, 2011 WL 1938133 (N.D. Tex. April 26, 2011) (no privilege applies to communications with a tax preparer) (citing **Evergreen trading, LLC, ex rel. Nussdorf**, 80 Fed.Cl. 122 (Fed.Cl. 2007)). The same is true of the bank and credit records sought. These documents are relevant for the same reasons that the tax returns are relevant, and Plaintiffs have no basis to withhold those documents.

Next, the production of tax returns is, in fact, one of the least burdensome methods for Plaintiffs to provide the requested information. For Plaintiffs' convenience, and to ensure

12

accuracy and completeness, Defendants' document requests included IRS Forms[3] 4506 and 4506-T for the relevant years, which authorize Defendant to obtain the records directly from the IRS. Plaintiffs can simply sign the forms, and Defendants would then bear the time and expense of obtaining accurate documents from the IRS. Plaintiffs, of course, would still be required to provide those documents used to complete the returns, which they still have in their care, custody, or possession.

Likewise, Defendants supplied the Plaintiffs with forms granting Defendants permission to obtain Plaintiffs' credit reports. *See* Authorization to Release Information, Ex. 13. Again, Defendants will bear the expense of obtaining the reports and will bear the expense of seeking records from entities identified in the credit reports.

### III. THERE IS NO COMPARABLE SOURCE FOR THE INFORMATION CONTAINED IN THE TAX RETURNS.

As the Seventh Circuit recognized in **Poulos**, "it is not enough that [a plaintiff] examine the contents of the returns and swear by affidavit to what they contain." 959 F.2d at 75 (ordering production of tax returns despite affidavit describing contents) (quotation omitted). Defendants maintain copies of Plaintiffs' driver's licenses, social security cards, and contact information. There is little additional personal or private information the tax returns will provide. There is nothing to be gained by having this same information produced in a round-about way, such as via interrogatories or depositions. Defendants are being sued by over thirty Plaintiffs – a number which may grow. Consideration must be given to the burden of discovery on Defendants, and in general. It is much simpler for Plaintiffs to provide their tax returns (via signed IRS Forms 4506 and 4506-T), than for Defendants to recapitulate those returns via interrogatory and deposition.

---

[3] The Form 4506 and 4506-T, as submitted to Plaintiff Trotta, are attached hereto as Ex. 14.

Any marginal savings in privacy is vastly outweighed by the burden of attempting to recreate the tax returns.

Further, Plaintiffs have established via their discovery requests that they will not be forthcoming regarding their financial information. Plaintiffs have objected to, been unable to or otherwise failed to, fully provide information or documents regarding: their work history (Interrogatory 5); their banking (Interrogatory 6); their sources of income (Interrogatory 7); applications for credit (Interrogatory 10); Credit cards (Interrogatory 11); the amount of "tips" they received while performing at Defendants' establishments (Interrogatory 14); the amount of "dance fees" they received while performing at Defendants' establishments (Interrogatory 13); documents relating to the income they generated while performing at Defendants' establishments (Requests 10, 11, 12); income from self-employment (Request 13); any monies recieved from patrons (Request 22); any monies received from performing at other clubs (Request 23); other sources of income (Request 24); applications for credit or loans (Request 38); job applications (Request 40); credit cards (Request 41); damages sought (Request 45). *See, e.g.*, Trotta's Answers to Interrogatories, Ex. 6; Trotta's Answers Document Requests, Ex. 5; Melissa Chavez's Answers to Defendants' First Set of Interrogatories, Ex. 15; Melissa Chavez's Answers to Defendants First Set of Requests for Production, Ex. 16). In response to the 55 document requests Defendants have submitted to eight of the Plaintiffs, they received only 62 pages relating to one Plaintiff (Trotta), and a single page relating to another. Obviously, Plaintiffs must be compelled to provide tax returns and other financial documents because they are unable or unwilling to provide relevant information.

The FLSA test for employment is broad and all-encompassing.

Economic dependence is the touchstone in determining economic reality, but "all the circumstances of the work activity" should be considered to determine "the

nature of the working relationship . . . ." **Secretary of Labor, U.S. Dept of Labor v. Lauritzen**, 835 F.2d [1529,] 1054 [(7th Cir. 1987)]; *see also* **Brock v. Superior Care, Inc.**, 840 F.2d 1054, 1059 (2d Cir. 1988) ("The factors that have been identified by various courts in applying the economic reality test are not exclusive. Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided.").

**In re FedEx**, 2006 WL 3755311, at * 4.

Plaintiffs are suing Defendants, claiming to be employees under the broad test described above, thereby putting all relevant facts at issue. Defendants are entitled to discover all facts supporting their claims and defenses, as well as information that may lead to the discovery of those facts.

### IV. PLAINTIFFS MUST REIMBURSE DEFENDANTS' REASONABLE COSTS FOR FILING THE PRESENT MOTION.

Rule 37(5)(A) provides that a Court "must" award costs to Defendant if this motion to compel is granted or if Plaintiffs provided the requested information after the filing of the motion, unless the Court finds the opposition to be "substantially justified." Defendants conferred with Plaintiffs' numerous times, through counsel, regarding the present motion. Nevertheless, four months after the returns were originally requested, Plaintiffs were unable to confirm if all eight (8) of the Plaintiffs served with discovery would be able to provide tax returns, or when those tax returns might be provided. Plaintiffs have flat refused to provide their banking and credit information, despite the entry of the Protective Order in this case.

### CONCLUSION

Wherefore, for the forgoing reasons, Defendants respectfully request this Honorable Court enter an order:

A. Compelling Plaintiffs Monica Rafeedie, Melissa Chavez, Sophea Trotta, Chanlekha Meaux, Amanda Grimes, Stephanie Gise, Ashlee Strickland and Ana Olivo, to produce

1. The documents and things sought by Requests 12, 13, 16, 23, 24, 30, 31, 32, 33, 40, and 41;

2. The information sought by Interrogatories 6, 7, 9, 10, 11;

3. Fully executed IRS Form 4506's and Form 4506T's (*see* Ex. 14), as sought by Requests 53 and 54; and

4. Fully executed Authorizations to Release Information (see Ex. 13), as sought by Request 55, to release credit reports;

B. Awarding Defendants their costs for bringing the present motion;

C. Providing that any Plaintiff not in compliance with Paragraph A by August 23, shall have their claims dismissed from this action; and

D. Awarding such further and additional relief that the Court deems just and appropriate.

Dated: August 10, 2011            Respectfully submitted,

SHAFER & ASSOCIATES, PC

*s/Matthew J. Hoffer*
Bradley J. Shafer (MI Bar No. P36604)
Matthew J. Hoffer (MI Bar No. P70495)
Co-Counsel for Defendants
Lansing, Michigan 48906-2110
3800 Capital City Boulevard, Suite 2
(517) 886-6560
Fax:  (517) 886-6565
matt@bradshaferlaw.com


BRIAN W. BISHOP
LAW OFFICES OF BRIAN W. BISHOP
Co-Counsel for Defendants
115 Wild Basin South, Suite 106
Austin, Texas 78746
Telephone: (512) 327-5121
Facsimile: (512) 327-5122
Email:  brian@bbishoplaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed Defendants' Motion to Compel with the United States District Court for the Western District of Texas and thereby upon all parties.

Dated:  August 10, 2011              *s/Matthew J. Hoffer*
                                           Bradley J. Shafer (MI Bar No. P36604)
                                           Matthew J. Hoffer (MI Bar No. P70495)
                                           SHAFER & ASSOCIATES, PC
                                           Co-Counsel for Defendants
                                           Lansing, Michigan 48906-2110
                                           3800 Capital City Boulevard, Suite 2
                                           (517) 886-6560
                                           Fax:  (517) 886-6565
                                           matt@bradshaferlaw.com