IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MONICA RAFEEDIE on Behalf of** § | | |
| **Herself and Others Similarly Situated** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| vs. § | CASE NO. 1:10-cv-743-LY | |
| § | | |
| **L.L.C., INC. d/b/a PERFECT 10 MEN'S** § | | |
| **CLUB and W.F.K.R., INC. d/b/a** § | | |
| **SUGAR'S UPTOWN CABARET** § | | |
| **Defendants.** § | | |

### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Monica Rafeedie, on behalf of herself and others similarly situated ("Plaintiffs"), files this Motion for Protective Order pursuant to Rule 26 as follows:

### I. SUMMARY

This is a collective action under the Fair Labor Standards Act (FLSA). Although collective actions are to proceed as representative actions through discovery, Defendants are seeking to eviscerate the efficiencies of the collective action process by pounding the plaintiffs with thousands of discovery requests. Many, if not most, of these requests have nothing to do with plaintiffs' minimum wage or overtime claims. Rather, they are simply an attempt to make this process so burdensome that Plaintiffs are forced to abandon their claims.

To that end, Defendants served twenty-four opt-in Plaintiffs with 21 interrogatories (most of which include multiple sub-parts) and 55 requests for production (again, most of which include multiple sub-parts) (collectively, the "Requests"). *See*,

1

Exhibit 1 and 2.[1] Plaintiffs' responses to these Requests are due on 9/23/11. *See*, Exhibit 3. Shortly thereafter, Defendants served the same Requests on five additional Plaintiffs. *See*, Exhibits 4 and 5. Per the Parties' agreement, Plaintiffs' responses to Requests served after 8/16/11 are due on 10/23/11.

All told, Defendants served over 3,000 individual discovery requests on Plaintiffs – asking for loan applications, job applications, credit card statements, joint checking/savings account statements, food stamp applications, tax returns, etc. – spanning a period as long as 6 years. This is not reasonable or relevant discovery. Court assistance is necessary to protect Plaintiffs from this oppressive discovery.

## II. RELIEF REQUESTED

Plaintiffs respectfully request the Court enter a protective order pursuant to Rule 26.[2] A protective order is appropriate in this case to: (1) protect Plaintiffs from having to respond to all 21 interrogatories (798 separate requests, excluding sub-parts) and 55 categories of document requests (2,090 separate document requests excluding sub-parts), (2) forbid the discovery of Plaintiffs' tax returns, bank statements, credit applications, etc. ("financial information"), (3) specify the parameters for written discovery that Plaintiffs, or a representative sample of the claimants, will be required to answer, (4) prescribe the method of discovery (i.e. depositions vs. written discovery), and (5) limit the scope of discovery to matters that are relevant to the instant dispute.

---

[1] The highlighted names are opt-in Plaintiffs who have dismissed their claims after being served with the Requests.
[2] Defendants filed a motion to compel the production of financial information from seven (7) *other* Plaintiffs who were served with the Requests in April 2011. *See*, Doc. 112. Plaintiffs' objections to Defendants' motion and the arguments/authorities cited therein are incorporated by reference as if fully set forth herein. *See*, Doc. 124.

Prior to filing this motion, Plaintiffs' counsel attempted to work out a discovery plan with defense counsel but, regrettably, no agreement could be reached.  *See*, Exhibits 6 and 6-A.  Plaintiffs even produced the tax returns for four of the claimants who were served with discovery in April 2011 in a good faith attempt to demonstrate how the claimants reported the income made while under Defendants' employ.[3]  Such cooperation did not satisfy Defendants.  Plaintiffs now seek an order from the Court to protect them from this abusive and oppressive discovery.

### III. PROCEDURAL BACKGROUND

Monica Rafeedie is a former dancer who worked at Perfect 10 Men's Club (Perfect 10) and Sugar's Uptown Cabaret (Sugar's) in Austin, Texas. On 10/6/10, Ms. Rafeedie filed this suit on behalf of herself and others similarly situated, alleging that she and the other dancers at Perfect 10 and Sugar's (collectively "the Clubs") were misclassified as "independent contractors" by Defendants and, as a result, were not paid minimum or overtime wages in violation of the Fair Labor Standards Act.  (Doc. 1).

On 5/9/11 the Court conditionally certified this case as a collective action and authorized the issuance of notice to the putative class members.  (Doc. 77).  While the number of putative class members totaled 3,059, the Parties agreed that notice would <u>not</u> be mailed to those class members who signed agreements to arbitrate their claims with Defendants.[4]  Accordingly, on or about 7/7/11, notice was mailed to approximately 2,530 putative class members.[5]  The deadline to opt-in was 9/7/11.  Of the 2,530 notices that were mailed out, over 1,600 were returned as "undeliverable."  Ultimately, about forty-

---

[3]  Plaintiffs did so subject to and without waiving their objections.
[4]  This agreement was made in order to avoid an appeal taken by Defendants on the denial of their motion to compel arbitration and in light of the fact that the class members' claims would not be tolled during the pendency of Defendants' appeal.
[5]  A copy of the notice form mailed to class members is attached as Exhibit 6.

three (43) class members joined this case.  <u>However, after being served with Defendants' Requests, eleven (11) claimants immediately asked Plaintiffs' counsel to withdraw their consent form and be dismissed from this case</u>.[6]  Therefore, almost a third of the claimants (many of who risked their employment with Defendants just to join this case) fled for higher ground when they received Defendants' monsoon of discovery.

This case is currently set for final pretrial conference on 7/27/12 and for jury trial the month of August 2012.  (Doc. 97).  Absent agreement of counsel, the deadline to complete discovery is 12/3/11.  *Id*.

### IV. LEGAL AUTHORITY

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Ransom v. M. Patel Enterprises, Inc.*, 2011 WL 3439255, at *3 (W.D. Tex. Aug. 5, 2011). "The federal civil rules generally govern discovery; but the district court's power to control it is evidenced by Rule 26(c), allowing protective orders to limit or compel discovery." *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 515 (5th Cir.1993). For good cause, courts may also issue orders under Federal Rule of Civil Procedure Rule 26(c) "forbidding inquiry into ... or limiting the scope of disclosure or discovery" into certain matters to protect parties from "embarrassment" or "oppression." *Id.*

---

[6] Eleven of the Plaintiffs dismissed their claims immediately after being served with these Requests in fear of having to disclose and/or produce the financial information requested.  *See*, Doc. 125, 126, 130, 132, 133, 134, 135, 136, and 139.

4

In this case, Defendants' Requests are overreaching, overly broad, unreasonably duplicative, burdensome, embarrassing, and oppressive.[7] Moreover, the burden and expense of the proposed discovery outweighs its likely benefit. Finally, Defendants' attempt to conduct such extensive and intrusive *individualized* discovery has already had a chilling effect on this case – causing dozens of class members not to join this case, and causing claimants who did join to dismiss their claims. For these reasons, a protective order is appropriate under Rule 26.

## V. CHILLING EFFECT OF THE CLASS NOTICE AND DEFENDANTS' DISCOVERY REQUESTS

In their answer, Defendants asserted fifty-seven (57) affirmative defenses and six (6) counterclaims. (Doc. 24). Of import to this motion, all of Defendants' counterclaims (and many of the affirmative defenses) rested upon the supposition that the dance fees collected by Plaintiffs could be used by Defendants to offset their minimum and overtime wage obligations. *Id*. Accordingly, Defendants sought to impose a constructive trust on these dance fees, and sued Plaintiffs for "conversion," "unjust enrichment," "restitution," "fraud," and "*quantum meruit*," among other things. *Id*.

On 11/13/10, Plaintiffs moved to strike these counterclaims, as well as fourteen (14) of Defendants' affirmative defenses. (Doc. 14). On 8/25/11, the Court granted Plaintiffs' motion in part by striking all of Defendants' counterclaims. (Doc. 122).[8]

---

[7] Defendants' Requests are attached hereto as Exhibit 7 (interrogatories) and 8 (requests for production).
[8] On 9/22/11, Defendants filed a motion to reconsider the Court's decision. (Doc. 138).

5

### A. The Class Notice

Unfortunately, the Class Notice was mailed out six weeks <u>before</u> (on 7/7/11) the Court's order striking the counterclaims. The Class Notice admonished putative class members that:

> "Perfect 10 and Sugar's vigorously deny the allegations made by Ms. Rafeedie; contend that they have properly classified the dancers as "independent contractors"; and contend that the mandatory fees collected and retained by the dancers fulfill any wage obligation owing if the Court were to decide that the Clubs dancers should be classified as "employees.
>
> **Perfect 10 and Sugars have also filed counterclaims against Ms. Rafeedie. The Clubs' claims against Ms. Rafeedie contend that, if she was in fact an "employee" of the Clubs she has unlawfully and unfairly kept the mandatory dance fees she charged patrons, which belong to the Clubs in an employment relationship**.
>
> **What Happens if I Join?**
>
> If you join this lawsuit by filing your consent, you will be suing Perfect 10 and/or Sugars on the claims asserted by Ms. Rafeedie and **the Clubs will be asserting the same counterclaims against you that they have asserted against Ms. Rafeedie**."

*See,* Exhibit 9. As a result of this admonitory language (which the Court later struck from Defendants' answer), Plaintiffs' counsel fielded dozens of phone calls and inquiries from putative class members who indicated that they received the Class Notice and wanted to join the case but were afraid to do because they could not afford to pay Defendants the dance fees they collected if Defendants prevailed on their counterclaims. Others advised counsel that they did not keep track of all dance fees and/or tips that they received from patrons and were fearful that joining the suit would result in their being reported to the IRS. Thus, the fear of having to turn over all of their financial

information, account for the dance fees, and face possible financial loss if Defendants prevailed had a chilling effect on many class members' willingness to join this case.[9] The Court acted properly, therefore, in striking Defendants' counterclaims. For the same reason, Plaintiffs should not be required to submit to such intrusive and extensive examination of their personal financial history and status.[10]

### B.   Defendants' Request for Financial Information

Defendants first requested the disclosure of tax returns in connection with the deposition of Sophea Trotta. (Doc. 112 - 1). Namely, Defendants' *subpoena duces tecum* requested Ms. Trotta's "federal tax returns and all documents utilized in the preparation of such returns" for the years 2007 – 2010. *Id*. Plaintiffs' objected to this request to the extent it sought the production of Ms. Trotta's tax returns. (Doc. 112 – 2). Nevertheless, at Ms. Trotta's deposition, she produced documents reflecting certain monies she collected from patrons and/or paid out to the Clubs.[11]

On 4/21/11, Defendants served nine (9) of the claimants with a set of interrogatories and request for production (the "Requests"). Of import to this motion, Defendants requested that each of the nine (9) claimants provide the following information:

**i) Requests for Production**

4. Any and all documents relating to you performing as an exotic dancer <u>at establishments other than</u> at Perfect 10 and at Sugar's.

---

[9] Indeed, in response to Plaintiffs' motion to conditionally certify this case, Defendants submitted the declarations from several current/former dancers – all who objected to even the disclosure of their names and contact information (<u>much less their financial information</u>) claiming this basic information to be private and confidential. (Doc. 23-4).

[10] Remarkably, Defendants claim that discovery seeking their financial information for the years 2007 – 2010 is "overly broad," "burdensome," and "irrelevant." *See*, Exhibit 10.

[11] Ms. Trotta, along with three other claimants, also produced their tax returns despite the fact that the Court has not ordered them to do so.

7

12. Any and all documents relating to the income you earned while performing as an exotic dancer <u>at establishments</u> <u>other than</u> at Perfect 10 and/or Sugar's, between October 6, 2005 and the present.

13. Any and all documents stating, documenting, memorializing, identifying, or relating to, any monies that you earned from employment or self employment from October 6, 2005 to the present.[12]

16. Any and all documents stating, demonstrating, memorializing, or identifying any monies that you paid to, or received from, <u>any establishment</u> <u>other than</u> Perfect 10 or Sugar's, in regard to any performances or "work" by you as an exotic dancer during the period from October 6, 2005 to the present.

20. Any and all documents stating, documenting, memorializing, or identifying, the time or times that you danced, performed or "worked" as an exotic dancer <u>at any establishment other than</u> at Perfect 10 or Sugar's, whether by the hour, day, "set" or "shift" from October 6, 2005 to the present.

23. Any and all documents stating, demonstrating, memorializing, or identifying, any and all monies that you received as an exotic dancer <u>from patrons at any establishment, other than at Perfect 10 and at Sugar's</u> from October 6, 2005 to the present.

24. Any and all documents stating, demonstrating, memorializing, or identifying, <u>any source or sources of income</u> that you have received from October 6, 2005 to the present and the amount of income received from each such source.

30. Each and every one of your local, state, and federal income tax returns, including all attachments and schedules thereof, for the calendar years 2005 through 2010.

31. Any and all documents used in the preparation of your local, state and/or federal income tax returns for the calendar years 2005 through 2010, including any and all documents used in the preparation of any and all attachments and schedules thereof?

32. Any and all documents you submitted to, or received from, any accountant, tax preparer, or other person, retained or consulted by you in connection with the preparation of your local, state and/or federal income tax returns for the calendar years 2005 through 2010.

33. Any and all documents that you have either received from, or sent to, any local, state, or federal taxing authority, agency, subdivision, or department, for the years

---

[12] It should also be noted that while Defendants originally sought Ms. Trotta's tax returns for the years 2007 – 2010 at her deposition (i.e. during the years relevant to this suit), Defendants have since expanded their request in the Requests to the years 2005 – 2010. *Id*.

8

2005 through 2010.

38. Any and all application for credit that you submitted from October 6, 2005, to the present (this request shall include, but not limited to, applications for credit cards; application for debit cards; mortgage application,; applications for home improvement loans; application for home equity loans; application for installment sales; applications relating to land contracts; application relating to the lease of real property; application related to vehicle leasing; and any applications for loan(s), credit, or installment payments relating to the purchase or leasing of any real and/or personal property, including but not limited to any vehicles, appliances, or furniture).

39. Any and all application that you have filled out and/or submitted for any job, work, employment, or self-employment from October 6, 2005 until the present.

40. Any and all any documents relating to any accounts that you maintained from October 6, 2005, to the present, either individually or jointly, in any bank, savings and loan, credit union, or brokerage house (including but not limited to balance and transaction statements, transaction notice, deposit slips, and withdrawal slips).

41. All statements from October 6, 2005 to the present for any credit card or debit card that you possessed, either individually or jointly, during that time period.

53. Provide a completed, signed copy of Form 4506, attached hereto.

54. Provide a completed, signed Form 4506-T, attached hereto for years 2005 – 2010.

55. Provide a completed, signed copy of Authorization to Release Information – 15 U.S.C. § 1681(a)(2), attached hereto.

*See,* Docs. 112 – 4 and 112 – 5 (emphasis added).

### ii) Interrogatories

5. State your work/employment history <u>for the past 10 years</u>, providing the name and address for each business where you have worked, been employed, or performed the name of your immediate supervisor; your job title; the rate of your pay; the dates that you worked/were employed/performed at or such business; and the reason for leaving.

6. For each and every <u>bank, savings or checking account</u> that you have opened or maintained since October 6, 2005 (whether individual or joint), state the name of financial institution, its address, <u>the account number</u>, and the dates the account was maintained. <u>For any joint account, identify the individual with whom you jointly opened or maintained such account</u>.

9

7.  State <u>each and every source of income</u> you have received <u>since October 6, 2005</u>, and state the amount received from each source of income.

9. For each and every local, state and federal income tax return that you filed each year from January 1, 2005, to the present:
a.  Identify each and every person who provided you assistance in the preparation or filing of such returns;
b.  State the date each such return was filed or mailed;
c.  Identify each and every document used, or relied upon, in the preparation of such return;
d.  State the amount of any payment made by you, or the refund received by you, in connection with each such return.

10. Have you, since October 6, 2005 applied for any type of credit, loan, or installment payment (including, but not limited to applications for credit cards; applications for <u>debit cards; mortgage applications; applications for home improvement loans; applications for home equity loans; application for installment sales; applications relating to land contracts; applications relating to the lease of real property; applications related to vehicle leasing; and any application for loan(s), credit, or installment payments relating to the purchasing or leasing of any real and/or personal property, including but not limited to any vehicle, appliances, or furniture</u>)? If so, with regard to each such application:

a.  State the name, address, and telephone number of the person, financial institution and/or other entity to whom the application was made or submitted;
b.  Identify each and every document used by you in preparing the application;
c.  State the <u>amount of the loan, the line of credit</u>, or the credit limit; as applicable:
d.  State whether the application was approved or denied.

11. As to <u>each credit card you have opened or maintained</u> since October 6, 2005. State the name, address, and phone number of the issuing financial institution; the type of credit card (e.g. Visa, Master Card, Discover, etc.); <u>the credit card account number or numbers, and the current expiration date of the card if you presently maintain the credit card</u>.

*See,* Doc. 112 – 6 (emphasis added).

Each of these requests is simply beyond the pale. For example, it is not necessary for Defendants to learn the credit card number – *and expiration date* - for each credit held by each Plaintiff for the past 6 years in order to determine whether she was their employee under the FLSA. Nor is it reasonable to request a minimum wage plaintiff

provide all information related to "any type of credit, loan, or installment payment" in order to participate as an opt-in plaintiff in a representative action such as this one. Moreover, these are simply examples of the *type* of burdensome and oppressive discovery served on Plaintiffs. Each one was designed to be oppressive and was served on each of the Plaintiffs with the goal of chilling participation in this action through intimidation. Defendants' message is clear: Join this case, and we will seek to pry into highly confidential details of your life that are unnecessary for resolution of this case and that no reasonable person would want to disclose simply to recover a few thousand dollars.

Despite the fact that Defendants served these onerous Requests, Defendants offered evidence from several "Jane Doe" witnesses from Sugar's and Perfect 10 in opposition to Plaintiffs' motion to conditionally certify this case that women in the exotic dancing industry do not like to share their personal information with anyone, are distrustful of others, and are afraid that information obtained in a case like this will be misused by the recipient. (Doc. 23-4). As a result, these Jane Doe witnesses objected to even the disclosure of their contact information. It's not hard to imagine what their response would be if now asked to turn over every last detail of their financial history.

Similarly, it is not surprising that Defendants' request for information that is exponentially more personal, private, and invasive (i.e. bank account numbers, credit card numbers, tax returns, loan applications, job applications, etc.) than mere "contact information" caused Plaintiffs, most of whom stand to recover a small amount of money in this case, to throw their arms up and dismiss their claims. In fact Defendants' Requests has already caused more than 25% of the opt-in Plaintiffs to abandon their

claims – some within 24 hours of learning from Plaintiffs' counsel that *there was even a possibility* that the Court *might* require them to furnish this information. *See, supra* footnote #5. Accordingly, Plaintiffs respectfully request the Court enter a protective order to prevent more claimants from becoming disillusioned with the process.

### VI. REPRESENTATIVE VS. INDIVIDUALIZED DISCOVERY

As a conditionally certified collective action, this case is to "proceed through discovery as a representative action." *Johnson v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d 753, 755 (S.D. Tex. 2004) *citing Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). One of the important benefits of the FLSA is that it allows employees to file actions as a group that might not get filed individually because common resources may be pooled together, thus reducing costs to the individual plaintiffs. This efficient resolution of claims is an important policy consideration behind the FLSA and a great benefit to the judicial system as a whole. *See, Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)(discussing the benefits of collective actions); *Geer v. Challenge Fin. Investors Corp.,* No. 05-1109-JTM, 2007 WL 1341774, at *3 (D.Kan. May 4, 2007)(noting the benefit of collective actions under the FLSA); *Crawford v. Lexington-Fayette Urban County Gov't,* No. 06-299 JBC, 2007 WL 293865, at *7 (E.D.Ky. Jan. 26, 2007) (finding that the objective of the FLSA is to lower costs to plaintiffs and limit the controversy to one proceeding).

Here, Defendants served extensive, overly broad, and onerous written discovery requests on all of the claimants.[13] Such discovery is improper given the representative nature of this action. *See, e.g., Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468

---

[13] Defense counsel has advised that he had served all Plaintiffs with the Requests; however, Plaintiffs' counsel has not yet verified this information.

(N.D. Ill. 1992) (denying employer's request for individualized discovery in FLSA collective action); *McGrath v. City of Philadelphia*, 1994 WL 45162 (E.D. Pa. 1994) (same). *Oropeza v. Appleillinois, LLC*, 2010 WL 3034247 at *6 (N.D. Ill., August 3, 2010)(permitting the parties to each select a number of deponents and present them at a mutually convenient time and place) Indeed, courts recognize that "individualized discovery is generally not appropriate in FLSA collective actions and should be limited to a representative sample of the entire group[.]"*Nelson v. Am. Standard, Inc.*, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009). Individualized discovery is particularly inappropriate in a case such as this one. The relevant information is largely within Defendants' control. For example, there is no dispute that: (1) Defendants hired the Plaintiffs to work as exotic dancers; (2) Defendants considered all of the Plaintiffs to be "independent contractors" (rather than employees) regardless of how many times a dancer worked at their Clubs; (3) Defendants did not pay any of the Plaintiffs minimum or overtime wages; and (4) Defendants records reflect, or should reflect, the dates each Plaintiff worked for the Clubs, how much and when the dancers paid "house fees" to the Club, how much and when the dancers turned in "script" or "funny money" to the Clubs, etc. Thus, Plaintiffs' financial information – bank statements, credit card applications, tax returns, joint accounts, loan applications, etc. are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case. Equally as important, however, Plaintiffs should not – in this collective action proceeding – be compelled to respond to over 3,000 individual discovery requests.

### VII. PLAINTIFFS' PROPOSAL ON DISCOVERY LIMITS

Plaintiffs are not trying to be obstructive or impair Defendants' ability to defend

themselves in this case. However, the Requests served are far too invasive and seek information that is well beyond the scope of reasonable discovery. As a compromise, Plaintiffs propose that:

- Each Plaintiff answer a standard interrogatory asking them to identify their employers (or places where they worked) during the years of 2007 – 2010.

- Each Plaintiff answer a standard interrogatory asking them to identify the amount of income declared on their federal income tax returns (<u>if one was filed</u>) for work they performed at Perfect 10 and Sugar's during the years 2007 – 2010.

- Each Plaintiff answer a standard interrogatory asking them to identify the type/category of expenses, if any, they claimed against their income that was reported on their federal income tax returns (if one was filed) for work they performed at Perfect 10 and Sugar's during the years 2007 – 2010.

- Each Plaintiff answer a standard request for production asking them to produce copies of all documents that they have in their care, custody, or control reflecting monies received from patrons (for dance fees, tips, etc.) at Perfect 10 and Sugar's during the years 2007 – 2010.[14]

- Plaintiffs will stipulate, if Defendants withdraw the Requests, that they reported the income made from their employment with Defendants as "self-employment" income on the federal income tax returns that they

---

[14] Plaintiffs do not object to providing this information. However, most Plaintiffs did not keep copies of any records showing how much they received from patrons on a given shift, week, etc. or the monies that they tipped out or paid to the Clubs. Those Plaintiffs that did keep records have produced them without objection.

filed, if a return was filed.

Doing so will better balance the competing interests of Plaintiffs (to their privacy) and Defendants (to obtain evidence about the economic realities of the business relationship of the parties) and will better serve the FLSA's remedial purpose of providing a forum to aggrieved individuals who might not otherwise be able to afford to file their own separate case.[15]

It is also important to remember that there is no dispute *how* Plaintiffs were classified by Defendants. Rather, the evidence is undisputed that Defendants' classified Plaintiffs (and all of the putative class members) as "independent contractors" rather than "employees." Thus, the Requested information will not provide any additional evidence on this undisputed issue.

More importantly, however, the law is well settled that an employee is not permitted to waive employee status. *Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740 (1981). See also*, *Donovan v. American Airlines, Inc.,* 686 F.2d 267, 269 (5th Cir. 1982); *Robicheaux v. Radcliff Material, Inc*., 697 F.2d 662, 667 (5th Cir. 1983) ("Likewise, the fact that they provided their own insurance coverage, listed themselves as self-employed on their tax returns, and had their own business cards and letterheads, does not tip the balance in favor of independent contractor status… A person's subjective opinion that he is a businessman rather than an employee does not change his status."); *Usery v. Pilgrim Equipment Co., Inc., supra,* 527 F.2d 1308, 1315 (5th Cir. 1976) *cert. denied*, 429 U.S. 826 (1979) ("We reject both the declaration in the lease agreement that the operators are 'independent contractors' and the uncontradicted

---

[15] Plaintiffs are serving Defendants (concurrently with the filing of this motion) with Request responses from six or seven *additional* opt-in Plaintiffs.

testimony that the operators believed they were, in fact, in business for themselves as controlling FLSA employee status."). Therefore, the fact that Plaintiffs may have reported their income from Defendants' clubs as "self-employment" income when they filed federal income tax returns is irrelevant.

## VIII.  CONCLUSION

Discovery is a two-way street. Plaintiffs are willing to engage in representative discovery. Plaintiffs are also willing to provide Defendants with responses to appropriate discovery requests. However, Defendants should not be permitted to use the discovery process as a mean to bludgeon workers into foregoing their rights under the FLSA while, in the same breath, refusing to produce their own financial information. In light of Defendants' refusal to agree upon a discovery plan, Plaintiffs respectfully request the entry of a protective order in accordance with the matters raised above.

    Respectfully submitted,

    **Debes Law Firm**

    */s/ Robert R. Debes, Jr.*
By: _____
    Robert R. Debes, Jr.
    Texas State Bar No. 05626150
    Federal I.D. 12308
    17 South Briar Hollow Lane, Suite 302
    Houston, Texas 77027
    Telephone: (713) 623-0900
    Telecopier: (713) 623-0951
    bdebes@debeslaw.com

    **COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I served a true and correct copy of this document on all counsel of record via Notice of Electronic Filing on known Filing Users on the 23rd of September 2011 as follows:

Bradley Shafer
Shafer & Associates, P.C.
3800 Capital City Blvd., Ste. #2
Lansing, Michigan 48906
(*via* ECF notification)

Brian Bishop
Law Offices of Brian W. Bishop
115 Wild Basin South, Suite 106
Austin, Texas 78746
(*via* ECF notification)

*/s/ Robert R. Debes, Jr.*
_____
Robert R. Debes, Jr.