UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

MONICA RAFEEDIE, et al,

               Plaintiffs,

    vs.

L.L.C., Inc., and W.F.K.R., Inc.,

         Defendants.

Civil Action No:  1:10-cv-743-LY

**HON. LEE YEAKEL**

BRIAN W. BISHOP
LAW OFFICE OF BRIAN W. BISHOP
Counsel for Defendants
115 Wild Basin Road, Suite 106
Austin, Texas 78746
(512) 327-5121
(512) 327-5122
brian@bbishoplaw.com

BRADLEY J. SHAFER (MI Bar No. P36604)
MATTHEW J. HOFFER (MI Bar No. P64147)
SHAFER & ASSOCIATES, P.C.
Co-Counsel for Defendants
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
(517) 886-6560
(517) 886-6565
info@bradshaferlaw.com

ROBERT B. DEBES, JR.
DEBES LAW FIRM
Counsel for Plaintiff(s)
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
(713) 623-0900
bdebes@debeslaw.com

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
AND/OR TO STRIKE WITNESSES**

NOW COME Defendants L.L.C., Inc., and W.F.K.R., Inc., by and through counsel, and hereby submit their response in opposition to Plaintiffs' Motion to Compel Discovery and/or to Strike Witnesses (Doc. 149).

## INTRODUCTION

The issues set forth in Plaintiffs' Motion to Compel Discovery and/or to Strike Witnesses (the "Motion") (Doc. 149) have largely been resolved.  Defendants have provided the Plaintiffs with the names and contact information for four (4) of the seven (7) Jane Does identified in Defendants' Rule 26 disclosures and have removed the other three (3) from their witness list.

The Parties have also agreed on deposition dates for Bill Cox and Teresa Thompson. Those depositions are planned to occur during the period of November 9-11, 2011.

The parties have reached a partial compromise on Plaintiffs' document requests. Defendants have agreed to produce financial statements showing the treatment of those "Entertainment Fees" (*see* Defendants' Answer to First Amended Complaint, Counterclaims, pp. 21-22, ¶ 7) that were taken into the Defendants' gross receipts, while other (irrelevant) financial information will be redacted from those statements.  Other records of these Entertainment Fees have already been produced, as discussed below.

The remaining issues are, thus, whether Defendants should be compelled to produce (1) Defendants' Federal Tax Returns; (2) documents reflecting "sources of income"; and (3) IRS Form W-2's and 1099's sent by Defendant to the IRS.  This information is irrelevant to the parties' dispute.  Plaintiffs requested this information by way of the Plaintiffs' Second Request for Production of Documents (*see* Defendant W.F.K.R., Inc.'s Response to Plaintiffs' Second Request for Production of Documents, Doc. 149-1).  Defendants have objected to these requests

as being overly broad, being unduly burdensome, and seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.  **Id**.

To date, Defendants have been generous in producing document to Plaintiffs in response to their discovery requests.  As set forth in the Defendant's Disclosure of Witnesses, Expert Witnesses, and Proposed Exhibits (the "Disclosure of Witnesses and Exhibits") (Doc. 169), Defendants have produced approximately 8,666 pages of documents in response to Plaintiffs' discovery requests, and another 417 pages of documents in conjunction with their Rule 26 disclosures.  When Plaintiffs requested updated versions of documents previously produced to assist with Plaintiffs mandatory settlement demand, those documents were produced, in approximately a week.[1]

## ARGUMENT

The information contained in Defendants' financial records and tax records is irrelevant to the present dispute.  To the extent that the information is relevant, it can be ascertained by reference to documents Defendants have already produced or have already agreed to produce.  As explained in Defendants' Motion to Compel Plaintiffs' Tax Returns and Financial Information (Doc. 111, pp. 8-9[2]), tax returns are not privileged *per se* (**F.D.I.C. v. LeGrand**, 43 F.3d 163, 172 (5th Cir. 1995)), but there is a judicial reluctance to order the disclosure of tax returns in the regular course of discovery (**Natural Gas Pipeline Co. of America v. Energy Gathering**, 2 F.3d 1397, 1411 (5th Cir. 1993)).  Courts have declined to order the production of tax returns where the information is "readily available" from other sources.  *See, e.g.*, **Walker v.**

---

[1]      This refers to certain worked reports originally produced as Bates #2760-2800, and then updated as Bates #8436-8642.  *See* Defendant's Disclosure of Witnesses and Exhibits (Doc. 169), pp. 6 and 10.

[2]      Unless otherwise indicated, page numbers refer to the page numbers assigned by the ECF header stamped across the top of the document.

**Rent-a-Center**, 2006 WL 2860553, at *2 (E.D. Tex. Oct. 3, 2006).  In must be kept in mind that it is *Plaintiffs* that have filed claims placing *their* income at issue, *not Defendants*.

A.    **THE INFORMATION PLAINTIFFS SEEK IS AVAILABLE FROM OTHER SOURCES OR IS ALREADY IN THEIR POSSESSION.**

The information Plaintiffs' seek (unlike the information Defendants seek from Plaintiffs), is readily available from other sources, including documents Defendants have already produced. For example, at the Rule 30(b)(6) deposition of Defendants, designee Bill Cox testified that the "productivity detail reports" Defendants have produced generally reflect the "Funny Money" redeemed by entertainers such as the Plaintiffs.  Deposition of William Cox as Rule 30(b)(6) Representative of Defendants ("Cox Rule 30(b)(6) Dep."), p. 116:20-117:13. Ex. A.  Funny Money, or script, are notes of a specified denomination that a patron can purchase from a club with a credit card.  The funny money can then be used by a patron to purchase a private dance from an entertainer.  The entertainer then redeems the script for cash.  Defendants produced "productivity detail reports" for each Plaintiff as part of the Clubs's entertainer files that were provided to Plaintiffs over the course of discovery.   These records were contemporaneously maintained.  *See* Cox Rule 30(b)(6) Dep., p. 116: 22-25, Ex. A ("when it says 25, they had to punch in the 25 dances for her to redeem her $25 – or her $500 in funny money that day.")

In addition, Defendants have also provided contemporaneously maintained records that show the amount of script redeemed by each entertainer each day.  *See* Script Redemption Sheet, Ex. B.  Hence, Plaintiffs already have in their position contemporaneously maintained daily records showing the amount of script redeemed by each Plaintiff.

Likewise, Defendants have already produced the IRS Form 1099-MISC issued to each of the Plaintiffs in conjunction with the entertainer files turned over to Plaintiffs.  *See, e.g.*, Trotta IRS Form 1099-MISC's, Doc 131-3.  If Plaintiffs need additional verification that these are the

same amounts, this could be accomplished by Plaintiffs completing IRS Form 4506-T's ("Request for Transcript of Tax Return").  These are the forms Defendants, via their requests for production, have requested Plaintiffs execute and return to Defendants.  *See, e.g.*, Olivo's Responses to Request for Production Nos. 53-55, Request 54, Doc. 164-5, p. 13.  By checking box 6(b) of the IRS Form 4506-T, a Plaintiff may obtain a transcript of their tax return which includes amounts reported on IRS Form 1099's.  Had Plaintiffs dully executed these forms and returned them to Defendants when originally requested, Plaintiffs would already be in possession of the information they seek.

Or course, Plaintiffs seek not only the already-produced IRS Form 1099's issued to them, they also seek a "copy of all W-2's, 1099s, and 1096's filed by [Defendants] with the Internal Revenue Service. . . ."  Defendant W.F.K.R., Inc.'s Response to Plaintiffs' Second Request for Production of Documents, Request 3, Doc. 149-1, p. 4.  However, in their motion, Plaintiffs make no direct attempt to explain why this information is relevant.  Quite simply, the amount of money Defendants have paid out to their employees or to other (non-entertainer) independent contractors has no bearing on whether Plaintiffs are truly Defendants' employees, Plaintiffs' Damages, the amount of Defendants' damages via the counterclaims or the amounts at issue with respect to Defendants' affirmative defenses.  This request is completely irrelevant and borders on harassment.  It implicates not only the privacy interests of Defendants, but also the privacy interests of all their true employees, who have not filed claims and who have not put their income at issue before this Court.

The same is true with respect to Plaintiffs request for Defendants' Federal Tax Returns for the years 2007-2010.  The only reason Plaintiffs offer for requesting this information is that "they are possibly the *only* sources of information memorializing the income received by

Defendants and the only way to verify whether the "dance fees" were in fact taken into Defendants' gross receipts as claimed." Motion, Doc. 149, p. 3-4. That simply is not true. The IRS Form 1099's *alone*, demonstrate that that the amounts were distributed out of Defendants gross receipts. That is what Defendants reported to the IRS. Should Plaintiffs need to verify the 1099 amounts further, they can be compared to the productivity detail reports and the daily script redemption sheets. Nevertheless, in an abundance of caution, Plaintiffs have agreed to provide financial statements that will show how Defendants accounted for the Funny Money funds. There is no independent need for Defendants' tax returns.

**B.     THE REQUEST FOR ALL DOCUMENTS REFLECTING "SOURCES OF INCOME" SEEK IRRELEVANT INFORMATION AND ARE VASTLY OVERBROAD.**

For the same reasons stated above, Plaintiffs have no need for "[a]ll documents reflecting the sources of income received by Sugar's during the period of 1/1/07 to the present." Defendant W.F.K.R., Inc.'s Response to Plaintiffs' Second Request for Production of Documents, Request 2, Doc. 149-1. Plaintiffs claim they were not paid minimum wages. Defendants have counterclaimed that the mandatory Entertainment Fees collected and retained by Plaintiffs satisfy wage obligations. *See* 29 C.F.R. 531.55(b). The amounts that Defendants earned through food and beverage sales, door fees, etc. are not relevant to whether Plaintiffs were misclassified as independent contractors and do not tend to show the amount of Entertainment Fees they collected.

The breadth of this request is breathtaking. Documents responsive to this broad request would require Defendants to somehow reproduce or offer for inspection every receipt issued to every customer for every purchase for the last 4 years in addition to all summary documents and reporting relating thereto. "A party resisting facially overbroad or unduly burdensome discovery

need not provide specific, detailed support." **Cotracom Commodity Trading Co. v. Seaboard Corp.**, 189 F.R.D. 655, 665 (D. Kan. 1999).  Here the court can clearly judge the breadth and burdensomeness of the request from its face.

As a whole, Plaintiffs' requests (including the requests for tax documents), seek highly confidential and irrelevant information such as interest obtained through bank accounts, compensation of officers, taxes paid, charitable contributions, depreciation of equipment (including equipment lists), license fees paid, insurance premiums paid, legal expenses paid for matters that have nothing to do with this litigation, bookkeeping expenses, office expenses, cash on hand, accounts payable, other liabilities and the like.  None of this has anything to do with the matter at hand.

Rather than turning over all this information, Defendants have offered to provide financial statements that reflect the treatment of the Funny Money purchased by customers and redeemed by entertainers.  Those records, together with the documents already produced, leave no need for Defendants to open their books for Plaintiffs to scrutinize.  Plaintiffs motion to compel this information should be denied.

C.      **THE REAL REASONS FOR PLAINTIFFS REQUESTS**.

The timing of Plaintiffs requests is also suspect.  If Plaintiffs truly believed the information requested by their Second Request for the Production of Documents is relevant, one would expect the information would have been requested by their original discovery requests.  It was not.  Instead, the requests were served on August 2, 2011 – one day after counsel for Defendants asked whether Plaintiffs' tax information would be provided "or should I move ahead with the motion to compel."  Email of August 1-2, Doc. 112-10, p. 5-6.  *See also* **Id**. at p. 5 (counsel for Plaintiffs responds "FYI I will be serving you with a set of RFP's to obtain your

clients' tax returns, schedules, etc. . . ."). As set forth in Defendants' objections to the second set of document requests, the "discovery request is solely interposed as a means to harass [Defendants] in response to Defendants seeking the federal tax returns of Plaintiffs." Doc. 149-1, p. 3.

Another ulterior purpose of the request is to allow Plaintiffs to scrutinize Defendants tax reporting and financial documents in search for any inaccuracy Plaintiffs might use to impeach the credibility of Defendants' representatives. In **Marko v. U.S.**, 314 F.2d 595, 597 (5th cir. 1963), the Fifth Circuit determined that the trial "court erred in admitting in evidence, over appellant's objections, the income tax returns and the evidence relating to them," because the evidence was offered solely for impeachment and "was not material to the issue on trial." In other words, tax returns are not relevant simply to challenge the veracity of a witness. *See also* **State Farm Fire & Cas. Co. v. McFerrin**, 382 F.2d 282, (5th Cir. 1967) (affirming the trial courts' refusal to admit tax returns to impeach credibility of the witness).

Finally, it is likely that Plaintiffs seek Defendants tax returns simply for the opportunity paint Defendants in a negative light for earning money. Plaintiffs seek to compare the economic positions of the Club and the Plaintiffs to illicit sympathy for the Plaintiffs and distain for the Defendants. Obviously, this is not an acceptable reason to require Defendants to produce this confidential information.

## CONCLUSION

Wherefore, for the forgoing reasons, Plaintiffs respectfully request this Honorable Court enter an order denying in full Plaintiffs' Motion to Compel Discovery and/or to Strike Witnesses (Doc. 149).

 Dated:  October 20, 2011                     Respectfully submitted,

SHAFER & ASSOCIATES, PC


*s/Matthew J. Hoffer*
Bradley J. Shafer (MI Bar No. P36604)
Matthew J. Hoffer (MI Bar No. P70495)
Co-Counsel for Defendants
Lansing, Michigan 48906-2110
3800 Capital City Boulevard, Suite 2
(517) 886-6560
Fax:  (517) 886-6565
matt@bradshaferlaw.com


BRIAN W. BISHOP
LAW OFFICES OF BRIAN W. BISHOP
Co-Counsel for Defendants
115 Wild Basin South, Suite 106
Austin, Texas 78746
Telephone: (512) 327-5121
Facsimile: (512) 327-5122
Email:  brian@bbishoplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed Defendants' Response to Motion to Compel Discovery with the United States District Court for the Western District of Texas and thereby upon all parties.


Dated:  October 20, 2011

_s/Matthew J. Hoffer_____

Bradley J. Shafer (MI Bar No. P36604)
Matthew J. Hoffer (MI Bar No. P70495)
SHAFER & ASSOCIATES, PC
Co-Counsel for Defendants
Lansing, Michigan 48906-2110
3800 Capital City Boulevard, Suite 2
(517) 886-6560
Fax:  (517) 886-6565
matt@bradshaferlaw.com